[No. G003580. Fourth Dist., Div. Three. Mar. 31, 1986.]

HYE SHIM LEHMAN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
KENT W. LEHMAN, Real Party in Interest.

COUNSEL

Lais & Luetto, Ronald E. Lais and Richard G. Vogl for Petitioner.

No appearance for Respondent.

Robert R. Wyatt for Real Party in Interest.

OPINION

SONENSHINE, J.—In the underlying marital dissolution proceeding, the trial court granted wife's motion to compel production of documents but

only as to property in existence on the date the parties separated. Wife contends the court's ruling imposes an impermissible restriction on her right to discovery. We agree and issue a writ.

## I.

The parties separated in March 1983 after a six-and-one-half-year marriage. Husband, a physician, subsequently terminated the medical practice he started in 1979, and opened a new office under the name West Orange Medical Group, Inc. Over the next few years he formed two satellite health care centers—East Orange Medical Group, Inc., and South Orange Medical Group, Inc. He also organized Western Medical Systems, Inc., a management corporation which administers the clinics' daily activities. Husband no longer practices medicine; instead, he oversees the entire operation. Some of his former patients do, however, obtain medical care and treatment at the clinics.

The instant dispute arises out of wife's efforts to examine the corporations' books and records. She contends the corporations are community property, that they are merely a continuation of husband's original practice under a different corporate entity. She argues she needs the materials to trace the original practice. Husband, claiming the four corporations established after separation[1] are his separate property, argues wife is not entitled to the records.

In August 1985[2] wife served husband with a notice to produce. It sought, among other things, individual federal and state tax returns for 1979 through 1984 (excluding state returns for 1982 and 1984); corporate income tax returns through 1984; personal bank records from 1981 through the present (excluding the Sumitomo Bank account from Oct. 22, 1984, to Mar. 22, 1985); corporate bank records from 1981 through the present; accounts receivable and accounts payable as of March 1983; unbilled receivables as of March 1983 and currently; patient ledger cards; general ledgers, cash disbursements, daily charge sheets, cash receipts registers and journals from January 1, 1980, through the present; personal notes receivable; loans and mortgages showing balances at separation and currently; compensation rec-

---

[1] The record discloses, however, that articles of incorporation for West Orange Medical Group, Inc. were filed March 25, 1982, a year prior to separation.

[2] More than two and one-half years had elapsed since wife initiated the dissolution proceeding. After husband filed his response in August 1983, the parties discussed the possibility of reconciliation. As a result, wife ceased contact with her lawyer. In September 1984, husband filed a motion for bifurcation (pursuant to which a judgment as to status only was entered Nov. 1, 1984), and wife (for the first time in more than a year) communicated with her attorney. But he would no longer represent her because husband had not paid him pursuant to an April 1983 court order for attorney's fees. She then retained new counsel who acted on her behalf until June 1985 when her present lawyer was substituted into the case.

ords for 1981 through the present; personal financial statements; and corporate financial statements for 1978 through 1984.

Husband refused to produce *any* of the documents. His response set forth objections on grounds of relevancy, privilege and ambiguity. He also claimed wife's three former attorneys had already conducted a considerable amount of discovery and the requests were therefore oppressive and burdensome.[3]

Wife moved to compel production. She claimed the requests were specific, the documents had not been previously delivered, and the materials were needed to trace the parties' community assets from husband's original medical practice to its present form. Her attorney's declaration indicated all records produced by husband had been forwarded to wife's accountant. But the accountant's declaration stated the financial data received[4] was fragmented and incomplete.

In his opposition, husband referred to wife's motion as "a demand that exceeds relevance of the matters at issue, beyond the reasonable bounds of permissible discovery and . . . an attempt to harass, annoy and disrupt [his] business and livelihood." He reiterated the contentions set forth in his response to the notice to produce. And in support of his relevancy argument, he cited a 1985 appellate court decision which held the date of separation is the proper date for valuing a law partnership for purposes of determining the community property interest.

The court was persuaded by husband's argument. It concluded wife "is entitled to discovery as to the present income of [husband], but not as to

---

[3]Contrary to husband's assertion, wife had *two* lawyers before retaining the present one. His reference to *three* prior attorneys apparently includes one whom wife contacted solely to request a continuance of the hearing on husband's bifurcation motion.

Moreover, the only discovery undertaken prior to the notice to produce consisted of a standard set of interrogatories served in May 1983, and a deposition (with request for document production) conducted in April 1985. At the deposition husband's counsel refused to produce any records pertaining to the medical corporations. He even refused to produce husband's 1982 federal tax return although it had been filed jointly with wife. He said he would be willing to produce documents if he knew exactly what was wanted. At one point he indicated he would "give [wife] what [he] can that doesn't get into a total exploration of [the] four corporations." At the conclusion of the deposition, wife's lawyer indicated a motion to compel production of documents would be forthcoming. However, wife retained new counsel shortly thereafter and no motion was made.

[4]This consisted of husband's 1982 and 1984 individual state tax returns (no federal returns); personal bank statements from Sumitomo Bank for the period October 22, 1984, through March 22, 1985; financial statement for West Orange Medical Corporation as of March 31, 1983; financial statements of husband's prior sole proprietorship as of April 1981 and April 1982; partnership agreement for Parkview Medical Center (a partnership comprised of husband individually and West Orange Medical Group); and bank statements (first page only) for West Orange Medical Group from October 1982 through April 1983.

the property past the date of separation."[5] Thus, while discovery was limited to property in existence on the date the parties separated, wife could still discover records of husband's current income for purposes of determining spousal support.

Wife moved for reconsideration. At the hearing her lawyer informed the court the decision relied upon by husband at the prior hearing had since been decertified. The motion was nonetheless denied, and this writ petition followed.

## II.

■ Ordinarily the prerogative writ is not a favored method of obtaining review of discovery orders (*Sav-on Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]), but it *is* appropriate where an abuse of discretion results in a *denial* of discovery. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170, fn. 11 [84 Cal.Rptr. 718, 465 P.2d 854].) Though broad, the trial court's discretion in discovery matters is not unlimited. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 380 [15 Cal.Rptr. 90, 364 P.2d 266].) "[I]f there is no legal justification for such exercise of discretion it must be held that an abuse occurred." (*Carlson* v. *Superior Court* (1961) 56 Cal.2d 431, 438 [15 Cal.Rptr. 132, 364 P.2d 308].) ■ We conclude the trial court in cutting off discovery at the date of separation abused its discretion as a matter of law.

Implicit in the court's decision is a finding the medical corporations are entirely husband's separate property. Indeed, husband acknowledges the ruling was based on the court's determination "assets clearly generated and acquired subsequent to date of separation were more than likely not 'community in nature.'" This conclusion was premature.

Before a trial judge can effect an equal division of community property as mandated by Civil Code section 4800, subdivision (a), the nature and extent of the parties' community assets must be ascertained. The subject ruling is erroneous because it thwarts wife's right to discover data essential for a characterization (as between community and separate) of the medical corporations.

True, "the valuation of an income producing asset which is under the control of a spouse, such as a medical or legal practice, is governed by Civil

---

[5]A formal order was not filed. The notice of ruling prepared by husband's counsel indicates the court granted the motion "subject to and specifically limited to date of separation, 3-1-83, save and except for [wife's] right of discovery as to the income, only, of [husband]."

Code section 5118 which makes any portion of the practice assets attributable to the earnings and accumulations of a spouse while living separate and apart the separate property of that spouse, subject to the application in reverse of the *Van Camp-Pereira*[6] rules." (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 424 [149 Cal.Rptr. 616]; see also *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 439 [119 Cal.Rptr. 590].) But this determination is for the *trial* judge, *after* the parties have had an opportunity to engage in discovery and present evidence on the issue.

We realize the situation presented is distinguishable from one in which a physician-spouse, after separation, maintains the *same* practice as before. If this were the case, it is unlikely the court would have questioned wife's right to examine the records. For purposes of discovery, however, this is a distinction without a difference.

In *Hauk* v. *Superior Court* (1964) 61 Cal.2d 295 [38 Cal.Rptr. 345, 391 P.2d 825], the defendants refused to answer deposition questions concerning gains and profits from certain business transactions. The trial court refused to compel answers, apparently because it believed it had absolute discretion to require the plaintiff to first establish a right to an accounting. Our Supreme Court issued a writ, concluding the trial court acted in excess of its jurisdiction because there was no factual or legal basis supporting its exercise of discretion.

Similarly, the court here apparently thought it had discretion to limit discovery to property "clearly" acquired during the marriage. This was based on the faulty premise the corporations are *entirely* husband's separate property simply because they were established after separation. Indeed, the corporations' characterization, the extent of husband's postseparation activities, and the identification of the community's interest, if any, are triable issues. And "[t]he fact that a triable issue has not yet been determined cannot bar the disclosure of information sought for the very purpose of trying that issue." (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 419, fn. 4 [15 Cal.Rptr. 119, 634 P.2d 295].)

Thus; the court, in imposing the separation date cutoff, deprived wife of the opportunity to substantiate her claim. Indeed, there are many scenarios which would validate her position. For example, husband may have used community assets to cultivate his new venture. Or perhaps he obtained loans which were extended on the basis of community credit. In either event, the

---

[6]*Pereira* v. *Pereira* (1909) 156 Cal. 1 [103 P. 488]; *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17 [199 P. 885].

community would have *some* interest, and wife is entitled to discover whatever corporate records as may be necessary to make this determination.[7]

■ California's discovery statutes "were enacted to promote, and have been interpreted in keeping with, the theory of expediting 'the trial of civil matters by allowing litigants an adequate means of discovery during the period of preparation for trial.' [Citation.]" (*Hauk* v. *Superior Court, supra,* 61 Cal.2d 295, 298.) Another objective is "to educate the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements . . . ." (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 376.) Neither purpose has been served here.

■ The smattering of documents thus far produced by husband are simply not enough to enable wife to adequately prepare for trial.[8] Nor are they sufficient to provide guidance to either party, for settlement purposes, with respect to the merits of wife's community interest claim. And while the court did not address husband's objections on grounds other than relevancy, so far as we can tell from the record none of them have any merit. The requests were not ambiguous. Nor did the notice seek documents already produced. In fact, it specifically *excluded* materials which *had* been furnished, i.e., husband's 1982 and 1984 state tax returns. As for husband's assertion of privilege, wife sought production of the "accounts receivable ledger cards for all patients," *not* their medical records. Unless this data reveals communications concerning the patients' ailments, the physician-patient privilege is not violated. (See *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 933-934, fn. 13 [114 Cal.Rptr. 603, 523 P.2d 643].)

The issuance of a peremptory writ in the first instance is proper. The only question presented is one of law, and we therefore see no purpose to be served by issuing an alternative writ. (Code Civ. Proc., § 1088; see also *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].)

---

[7]Wife also argues the court's ruling erroneously precludes her from *valuing* the medical corporations as of the date of trial, as required by Civil Code section 4800, subdivision (a). She points out husband at no time filed a motion for alternate valuation date pursuant to that section. In response, husband claims wife has not lost her right to value community assets at the time of trial, that the court's ruling does not place any limitation on the valuation date. These contentions are misplaced.

The *effect* of the ruling *is* to preclude wife from valuing community assets at the time of trial. But this is only because it deprives her in the first instance of an opportunity to ascertain what those assets are.

[8]In his opposition to the writ petition, husband informs us he has furnished wife's lawyer with the following: asset and liability statements for January 1983 through June 1983; federal and state tax returns for 1980 through 1983; personal financial statements for 1982 and 1983; bank statements and cancelled checks from Sumitomo Bank; partnership and lease agreements for West Orange Medical Group.

Let a peremptory writ of mandate issue directing the Orange County Superior Court to vacate its order and to enter a new and different order granting in its entirety petitioner's motion to compel production of documents.

Trotter, P. J., and Wallin, J., concurred.